UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| KATHI WEBSTER, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No.: 3:13-CV-670-TAV-HBG |
|  | ) |  |
| WAL-MART STORES EAST, L.P., | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**MEMORANDUM OPINION**

This premises liability action is before the Court on the motion for summary judgment by defendant Wal-Mart Stores East, L.P. ("Wal-Mart") [Doc. 15]. Plaintiff responded in opposition [Docs. 23, 24], and defendant replied [Doc. 27]. The Court has carefully considered the matter and, for the reasons stated herein, will grant defendant's motion.

**I. Background**

Plaintiff tripped and fell on May 4, 2013, while shopping in the Home & Garden Center of the Wal-Mart in Jefferson City, Tennessee [Doc. 1-2 ¶¶ 4–5]. She seeks at least $235,000 for her injuries [*Id.* ¶ 1]. Randy Phipps, the assistant manager assigned to the garden center that day [Doc. 24 p. 8; Doc. 23-3], testified that about 100 employees work at the Wal-Mart on a typical Saturday in May and that at least four employees were assigned to the garden center on the day of the incident [Doc. 28 ¶¶ 2–3]. The garden

center has an indoor area, an outdoor covered area, and an outside uncovered "corral" area [*See id.* ¶ 4; Doc. 23-3 p. 4–6].

It is undisputed the weather on the day of the incident was windy and trees for sale "kept falling over" [Doc. 25 ¶ 17; Doc. 23-3 p. 7 (Assistant Manager Phipps's Deposition) ("[W]e were periodically picking up trees all day long.")]. Mr. Phipps testified it was a rainy day and he "did not have anyone outside in the corral that morning" but that if a customer needed something, one of the garden center employees would have handled it [Doc. 23-3 p. 5]. He also testified it was customary for him and other employees to perform periodic sweeps and make sure the garden center was straightened for customers [Doc. 28 ¶ 7; *see also* Doc. 23-3 p. 4 (Phipps's Deposition) ("[W]e walk the areas [in] the morning, we make notes of what, if anything, needs to be changed.")].

The incident at issue in this litigation was recorded by Wal-Mart's video surveillance [Doc. 16-7 ¶ 3]. At 11:53 a.m., plaintiff, who is wearing a black shirt, and her husband enter the garden center [Doc. 20 (surveillance video)]. They walk around the garden center, near the area of the incident, for several minutes [*Id.*]. At 11:57:42 a.m., plaintiff's husband appears to stand and bend over in the exact area where plaintiff eventually falls [*Id.*]. Plaintiff's husband testified, however, that prior to the fall, they were not in that aisle [Doc. 25 ¶ 2]. At 11:58:10 a.m., plaintiff and her husband leave the garden center and walk back toward the store [Doc. 20]. They return to the same area of

2

the garden center at 12:02:31 p.m., and at 12:02:55 p.m., plaintiff can be seen falling between the trees [*Id.*].

Prior to the fall, plaintiff had been standing, looking at trees, which were between four and ten feet away from the area where she fell [Doc. 25 ¶ 11]. Then as plaintiff was walking around the wheelbarrows, she tripped on a landscape paver [*Id.* ¶ 4]. The paver was terracotta red, two to three inches tall, and eight to nine inches long, and had no reason to be where it was [*Id.* ¶ 14; Doc. 28 ¶ 6]. Plaintiff claims she never saw the paver before tripping on it [Doc. 23 p. 1]. She approximates that similar pavers were stacked on a pallet about fifty feet away from where she fell [Doc. 28 ¶ 5].

It is undisputed plaintiff has no evidence about when or how the paver came to be on the ground where she tripped [Doc. 25 ¶ 5]; no evidence about how long the paver had been in the area where she tripped [*Id.* ¶ 6]; and no evidence any Wal-Mart associate knew the paver was in the area of the incident before she tripped [*Id.* ¶ 7]. It is undisputed defendant has no proof that any type of aisle sweep was done prior to plaintiff injuring herself [Doc. 28 ¶ 8]. There were no witnesses to the incident besides plaintiff and her husband [Doc. 25 ¶ 8].

**II.    Standard of Review**

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact

3

exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a

4

finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

III. Analysis

Business proprietors are not insurers of their patrons' safety but must use due care under all the circumstances. *Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004). For an owner or operator of premises to be held liable for negligence in allowing a dangerous condition to exist on its premises, the plaintiff must prove, in addition to the elements of negligence,[1] that (1) the condition was caused or created by the owner, operator, or his agent, or (2) if the condition was created by someone other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident. *Id.*; *Piana v. Old Town Jackson*, 316 S.W.3d 622, 630–31 (Tenn. Ct. App. 2009). Therefore, there are three potential bases of liability—creation of the condition, actual notice, and constructive notice. *Newman v. Kroger Co.*, No. W2013-00296-COA-R3-CV, 2013 WL 5232275, at *5 (Tenn. Ct. App. Sept. 17, 2013).

It is undisputed plaintiff has no evidence about when or how the paver came to be on the ground where she tripped [Doc. 25 ¶ 5]; has no evidence about how long the paver had been in the area where she tripped [*Id.* ¶ 6]; and has no evidence any Wal-Mart

---

[1] In Tennessee, a claim for negligence cannot succeed in the absence of any of the following: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; or (5) proximate, or legal, cause. *Green v. Roberts*, 398 S.W.3d 172, 176–77 (Tenn. Ct. App. 2012) (citing *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993)).

associate knew the paver was in the area before she tripped [*Id.* ¶ 7]. Plaintiff does not claim Wal-Mart created the dangerous condition or had actual knowledge of it [*See* Doc. 1-2 p. 2; Doc. 23 p. 1]. Her theory of liability is predicated on constructive knowledge: that is, the paver on the ground was a dangerous condition that existed for such length of time that Wal-Mart, in the exercise of ordinary care, should have known of its existence. *See Bradley v. Wal-Mart Stores East, LP*, 587 F. App'x 863, 866 (6th Cir. 2014).

In Tennessee, "[a] plaintiff may prove constructive notice by showing that 'the dangerous or defective condition existed for such a length of time that the defendant, in the exercise of reasonable care, should have become aware of the condition.'" *Piana*, 316 S.W.3d at 631 (quoting *Blair*, 130 S.W.3d at 764). "Alternatively, the plaintiff may prove constructive notice by showing 'a pattern of conduct, a recurring incident, or a general or continuing condition indicating the dangerous condition's existence.'" *Id.* (quoting *Blair*, 130 S.W.3d at 765–66).

Determining whether the condition causing the injury existed long enough to give rise to a legal duty is generally a jury question. *Id.* "Before the question can go to the jury, however, the plaintiff must present 'some material competent evidence from which it can be logically inferred [that] the proprietor, by the exercise of ordinary care, would have or should have discovered the dangerous condition.'" *Id.* (quoting *Paradiso v. Kroger Co.*, 499 S.W.2d 78, 80 (Tenn. Ct. App. 1973) and citing *Chambliss v. Shoney's Inc.*, 742 S.W.2d 271, 273 (Tenn. Ct. App. 1987) ("When there is a complete absence of proof as to when and how the dangerous condition came about, it would be improper to

6

permit the jury to speculate on these vital elements.")); *see also Bradley*, 587 F. App'x at 867 ("'As a general rule, constructive knowledge cannot be established without some showing of the length of time the dangerous condition had existed.'" (quoting *Self v. Wal-Mart Stores, Inc.*, 885 F.2d 336, 338 (6th Cir. 1989)).

Defendant argues Tennessee courts, and courts applying Tennessee law, consistently dismiss premises liability claims when the plaintiff has no evidence about how or when the dangerous condition came to be [*See* Doc. 16 p. 7–8, 11 (citing *Nolley v. Eichel*, No. M2006-00879-COA-R3-CV, 2007 WL 980603, at *2–3 (Tenn. Ct. App. Apr. 2, 2007) (reasoning that "[a] vital element of proof upon which Plaintiff bears the burden is simply missing in this case" because, aside from Plaintiff's statements that she did not know how the liquid or broken beer bottle she slipped on came to be on the floor or how long the liquid or bottle had been there, "[t]here is no other proof of any kind in the record bearing on the length of time that the offending condition existed prior to the accident"), *Hampton v. Wal-Mart Stores, Inc.*, No. E2004-00401-COA-R3-CV, 2004 WL 2492283 (Tenn. Ct. App. Nov. 5, 2004) (finding testimony that, immediately after the plaintiff fell, she observed a man approach with a mop, was insufficient to allow a jury to determine whether the baby food she slipped on had been on the floor for so long that Wal-Mart should have known of its existence prior to her fall), and *Tinsley v. Wal-Mart Stores, Inc.*, 155 F. App'x 196, 198 (6th Cir. 2005) ("Without some evidence of how long the liquid was on the floor, [the plaintiff] cannot show that Wal-Mart should have discovered the dangerous condition through regular inspections."))].

7

Plaintiff believes defendant "takes too narrow a view of the duties business proprietors owe their patrons, especially a business as large as Wal-Mart" [Doc. 24 p. 7]. She urges the Court to focus on the circumstantial evidence and to consider the nature of the business, its size, the number of patrons, the nature of the danger, and its location along with the foreseeable consequences [*See id.* at 6–7 (citing *Paradiso*, 499 S.W.2d at 79)]. Plaintiff emphasizes that the Wal-Mart had about 100 people working that day, if not more; that the four garden center employees were aware they had a duty to maintain the garden center in safe condition; that no one was assigned to be outside in the corral that morning; and that, because the wind was blowing over many of the trees for sale, Wal-Mart was on notice that "there was already a level of disorder in the garden center" [*Id.* at 8–9; Doc. 23-3 p. 7].

But the cases cited by plaintiff support that summary judgment is appropriate in this case. In *Paradiso*, the plaintiff fell when her leg scraped against a piece of metal projecting from a display rack. 499 S.W.2d at 79. The Tennessee Court of Appeals upheld a directed verdict for the defendant because, like this case, there was no proof "as to what caused the protruding metal to come loose from the display rack" or "as to when the metal came loose or the length of time it had been protruding." *Id.* at 79–80; *see also Hardesty v. Serv. Merch. Co.*, 953 S.W.2d 678, 683 (Tenn. Ct. App. 1997) (holding that, because the plaintiffs "presented no proof as to how long before the accident the bed rail

8

had protruded into the aisle," they failed to establish the essential element of constructive knowledge).[2]

In *Workman*, the Court of Appeals reached a different result. But in that case, unlike plaintiff's situation and unlike *Paradiso*, there was a reasonable basis to conclude that sufficient time had passed to charge the premises owner with constructive notice of the dangerous condition. That is, sufficient time had passed for the thick, oily substance on the floor to escape its containers and the enveloping cellophane-covered basket and to spread two to two-and-a-half feet. *Workman v. Wal-Mart Stores E., Inc.*, M2001-00664-COA-R3-CV, 2002 WL 500988, at *3 (Tenn. Ct. App. Apr. 4, 2002). As the *Workman* court stated, "[i]t is true that a plaintiff must present proof as to the length of time that the dangerous condition existed in order to establish constructive knowledge of the hazard by the premises owner." *Id.*; *see also Jones v. Zayre, Inc.*, 600 S.W.2d 730, 732 (Tenn. Ct. App. 1980) (upholding directed verdict for the defendant when the plaintiff slipped on a plastic clip and there was "no proof as to how long the plastic clip had been on the floor or how it got there").

Plaintiff also cites *Benson*, which is distinguishable. The Court of Appeals in *Benson* reasoned, "the proven presence of two employees a few feet from the scene [of

---

[2] The Tennessee Court of Appeals recently stated that the holding in *Hardesty* remains good law. *Wolfe v. Felts*, No. W2013-01995-COA-R3-CV, 2014 WL 2462885, at *6 n.2 (Tenn. Ct. App. May 29, 2014). The concurring judge in *Hardesty*, who claimed to be "constrained to agree" with the majority's holding, argued that Tennessee law "place[s] an insurmountable burden on the innocent injured plaintiff." *Hardesty*, 953 S.W.2d at 685. The judge expressly invited the Tennessee Supreme Court to revisit this area of law, but *certiorari* was denied. *See id.*; *Wolfe*, 2014 WL 2462885, at *6 n.2.

9

the fall] could, to the minds of a reasonable jury, produce an inference that the spillage was observed or should have been observed by employees of defendant, thereby producing notice or constructive notice of the danger." *Benson v. H.G. Hill Stores, Inc.*, 699 S.W.2d 560, 564 (Tenn. Ct. App. 1985). No such inference is available to plaintiff. Here, plaintiff's theory that the paver was on the ground long enough to impute notice to Wal-Mart is not more likely than Wal-Mart's theory that plaintiff's husband put the paver there or that the paver otherwise came to be in the area shortly before the accident occurred. *See id.* at 563 ("The jury is not permitted to speculate as to which of two equally probable inferences is applicable, but such is not the situation in the present case.").

In sum, having reviewed the evidence in the light most favorable to plaintiff and relevant case law, the Court cannot find that the dangerous condition—the stray paver—existed for such a length of time that the defendant, in the exercise of reasonable care, should have become aware of it. The Court also finds no evidence of a pattern of conduct, a recurring incident, or a general or continuing condition indicating the dangerous condition's existence. Given these findings and the absence of constructive notice, the Court need not address defendant's comparative fault argument that, as a matter of law, plaintiff's fault was equal to or greater than the fault of the defendant.

## IV. Conclusion

For the reasons stated herein, the Court will **GRANT** defendant Wal-Mart's motion for summary judgment [Doc. 15] and direct the Clerk of Court to **CLOSE** this case.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE